CASES DETERMINED

IN THE

# SUPREME COURT

OF THE

## STATE OF MISSOURI

AT THE

OCTOBER TERM, 1910.

---

*(Continued from Volume 230)*

---

THE STATE v. CHARLES H. CARSON, Appellant.

### Division Two, November 29, 1910.

1. **APPELLATE JURISDICTION: Constitutional Question.** Where defendant insisted in his prayer for instructions and declarations of law that his conviction, under the information and evidence, would be in violation of the State and Federal Constitutions, his appeal from a judgment finding him guilty of unlawfully practicing medicine and surgery in this state, and assessing his punishment at a fine of $500, is to the Supreme Court.

2. **MOTION FOR NEW TRIAL: Sentence Immediately After Verdict.** Where a jury was waived and the cause tried to the court, and the court found defendant guilty, and immediately, without giving his counsel an opportunity to file a motion for a new trial, rendered his judgment, to which action defendant at the time excepted and gave notice that he would file his motion for a new trial within the statutory time, and did so, defendant did all the law demanded at his hands and

did not lose the benefit of his motion, and his exceptions will be considered on appeal.

3. **PHYSICIAN: Not Licensed After Act of 1901: Registered in 1880.** Under the Act of 1901, providing that no person "except physicians now registered" shall practice medicine without a license from the State Board of Health, a physician, registered in 1880 under the Act of 1877, is not required to have a license from said board, and is exempt from the penalties of the Act of 1901.

4. ———: ———: ———: **Effect of Act of 1883: Restoring Former Right.** The Act of 1883 required a graduate of medicine to present his diploma to the State Board of Health for verification and obtain a license; but it did not require him to register, and it was repealed by the Act of 1901; and though defendant was not licensed under the Act of 1883, that fact did not require him, if he was registered in 1880 under the Act of 1877, to obtain after 1901 a license to practice. Even if the Act of 1883 impliedly rendered his registration under the Act of 1877 ineffective, the Legislature could restore its efficacy by express provision, as it did in the Act of 1901, which expressly said it should not apply to "a physician now registered."

5. ———: ———: **Misconduct.** Where defendant is charged in the information with the single offense of practicing medicine without a license from the State Board of Health, he cannot be tried for misconduct that would have authorized the board to revoke his license.

Appeal from Jackson Criminal Court.—*Hon. E. E. Porterfield,* Judge.

REVERSED.

*Reed, Atwood, Yates, Mastin & Harvey, John T. Harding, Joseph S. Brooks* and *Dana, Cowherd & Ingraham* for appellant.

(1) A physician is registered under the Laws of 1901, who filed a diploma, and caused his name to be entered on the "Roll of Physicians," in the office of the clerk of the county court, and received a license signed by the county clerk on May 15, 1880, said acts being in conformity with the requirements of the Laws

of 1877. By complying with the requirements he became a "registered" physician within the meaning of the law. State v. Morgan, 96 Mo. App. 343; State v. Davis, 194 Mo. 485. (2) Repeals by implication are not favored by the law where they affect rights which have accrued under prior valid laws. There was no clause in the law of 1883 revoking licenses issued to physicians and surgeons under the Law of 1877. State v. Evans, 83 Mo. 319; State v. Andrews, 26 Mo. 171; State ex rel. v. Baker, 32 Mo. App. 98; Hannibal v. Guyatt, 18 Mo. 515; Foster v. Dowe, 29 Me. 442; State ex rel. v. Vernon County, 53 Mo. 128; Bank v. Snelling, 35 Mo. 190; State v. Patrick, 65 Mo. App. 653. (3) The court erred in refusing to declare the law as requested by defendant in its instructions 2a and 3a, to the effect that the defendant should be discharged for the reason that it appeared in evidence that the private citizen who filed the affidavit on which the information was based had no knowledge of the facts proven at the time the affidavit and information were filed. State v. Meadows, 106 Mo. App. 604; R. S. 1899, secs. 2477 and 2478; State v. Fuser, 75 Mo. App. 263; State v. White, 55 Mo. App. 356; State v. Shaw, 26 Mo. App. 383; State v. Webster, 206 Mo. 558.

*Elliott W. Major,* Attorney-General, and *John M. Atkinson,* Assistant Attorney-General, for the State.

(1) The first act regulating the practice of medicine and surgery passed in this State, is the Act of 1874, set out in the statement of this case. Under the Act of 1874 no one was to be allowed to practice medicine or surgery in this State, unless he had been graduated from a medical college or university with the degree of doctor of medicine, and he was required to register his diploma in the county of his residence. Section 3 of said act excepted from its requirements men who were engaged in the practice of medicine at

the time of the passage of said act, or those who entered into the practice of medicine prior to the first day of September, 1874, and permitted said excepted class to sign the roll of physicians in the county clerk's office the same as those having a diploma. The Act of 1877 repealed the Act of 1874, but section 1 of said act contained the proviso that said act should "not apply to any person who may now be authorized to practice medicine or surgery in this State by virtue of existing laws of this State in relation thereto." The Act of 1877 provided that persons having a diploma might practice medicine by having a certified copy of the same filed with the county clerk, and by signing the roll of physicians the same as was provided by the Act of 1874. Under Sec. 3 of the Act of 1874 (known as the "quack section") any person was authorized to sign the roll of physicians who was engaged in the practice of medicine on the first day of September, 1874. But few changes were made in the Act of 1877, and the proviso, as above quoted in the Act of 1877, was evidently inserted by the Legislature for the protection of those who had no diploma, and who had registered under section 3 of the Act of 1874. Under the Act of 1883 it was required of one who would practice medicine or surgery, that he should be a graduate in medicine, and exhibit his diploma for examination and verification to the State Board of Health, or if he should not be a graduate, he should stand an examination before the State Board of Health touching his learning, qualification and fitness to practice medicine and surgery. For the first time said Act of 1883 required the State Board of Health to issue certificates to those having the requirements of the law; the board was also to have two forms of certificates, one for those who were graduates of medical colleges and the other for those found on examination by the board of health to possess the necessary qualifications. The holders of these certificates were required to have them

registered in the county clerk's office of their residence. In section 11 of said Act of 1883 appears this proviso: "The provisions of this article shall not apply to those persons who have been practicing medicine five years in this State." By this proviso the Legislature again provided for all who had registered under section 3 of the Act of 1874 by permitting such persons to practice without a diploma and without taking the examination. The appellant having registered on May 15, 1880, under the Act of 1877, he had not, therefore, been engaged in the practice for five years, and did not come within the class excepted in section 11 of said Act of 1883. If appellant had a diploma, as stated in the certificate of the county clerk, offered in evidence, he was then in a position to have filed the same with the State Board of Health, and to have obtained a certificate from said board authorizing him to practice medicine and surgery in this State. This he could have done any time after taking effect of the Act of 1883, and until it was repealed by the Act of 1901. The latter act required all physicians thereafter to take an examination before receiving a certificate from said board, authorizing such person to practice medicine and surgery. Appellant having failed to comply with the Act of 1883, and not having been engaged in the practice for five years before the passage of the Act of 1883, and, therefore, not coming within the exception mentioned in section 11 of said act, he was "not now a registered physician" within the meaning of the law to practice medicine, as provided in section 1 of the Act of 1901. State ex rel. v. Goodier, 195 Mo. 551; State v. Hathaway, 115 Mo. 36; State v. Smith, 60 Mo. App. 283. The cases of State v. Davis, 194 Mo. 485, and State v. Morgan, 96 Mo. App. 343, cited and relied on by appellant, are not in point, and do not sustain the appellant in his contention. (2) While it is true that repeals by implication are not favored, yet, when the last general act is so

inconsistent that it and the former act cannot stand together, the courts do not hesitate to hold that the former act is repealed by implication. Yall v. Gillham, 187 Mo. 393; State v. Taylor, 186 Mo. 608; Evans v. McFarland, 186 Mo. 703; Kreyling v. O'Reilly, 97 Mo. App. 384. (3) The record in this case shows that appellant did not file his motion for a new trial and in arrest of judgment until after judgment. Hence the motions were filed out of time, and there is nothing for review except the record proper. R. S. 1899, sec. 2689; State v. Rosenblatt, 185 Mo. 118; State v. Pritchett, 219 Mo. 696.

GANTT, P. J.—The prosecuting attorney of Jackson county began this prosecution on November 19, 1906, by filing the following information in the criminal court of said county.

"Affidavit being filed according to law, now comes Isaac B. Kimbrell, prosecuting attorney for the State of Missouri, in and for the body of the county of Jackson, and informs the court that Charles H. Carson, on the —— day of May, 1906, at the county of Jackson, State of Missouri, did then and there unlawfully practice medicine and surgery in the said State of Missouri, and did then and there attempt unlawfully to treat the sick and others afflicted with bodily and mental infirmities, without first obtaining and having a license from the State Board of Health and without being then and there a physician registered according to law, against the peace and dignity of the State."

The affidavit on which this information was based was made by George Creel.

The defendant being arrested, filed his demurrer to the information, which was overruled, and he was then duly arraigned. A jury was waived and the cause tried to the court, and as will hereafter be noted, defendant was found guilty and his punishment assessed at a fine of five hundred dollars. For the reason that

the defendant insisted in his prayer for instructions and declarations of law that his conviction under the information and evidence would be in violation of the State and Federal Constitutions, and renewed these objections in his motion for new trial, this court has jurisdiction of this appeal.

When the information was filed the names of Dr. Adcock and George Creel were indorsed thereon as witnesses.

On the part of the state the testimony tended to prove that in July, 1906, the defendant treated a little boy six years old, the child of Mrs. W. H. Kemper, for a lame leg. When Mrs. Kemper was offered as a witness defendant objected on the ground that her name was not indorsed on the information, which objection the court overruled. On cross-examination, Mrs. Kemper testified she did not see Mr. Creel until the winter of 1907, long after the information was filed, when he came to her home to find out if Dr. Carson had treated the boy and how.

Dr. Adcock's testimony tended to show that the defendant admitted to him he had treated a case of appendicitis. The patient had been brought to him from Kansas in October or November, 1906. To this evidence defendant duly objected and excepted on the ground it was a distinct offense from the one on which the state relied for conviction in this case and on which it had elected to prosecute.

At the close of the state's case the defendant requested the court to acquit him, on the grounds that the information did not individuate any offense and did not name any particular person whom the defendant had treated medically, basing his contention on the language of the act, "and treating each patient shall be regarded as a separate offense."

After the court refused to acquit, the defendant offered in evidence a record kept in the office of the county clerk known as the "Roll of Physicians and

State v. Carson.

Surgeons,'' and especially that part of said roll·showing defendant was *registered* therein.

The defendant then read in evidence, after establishing the official character of the officer who issued it and after proving the genuineness of his signature and that the record was kept in the office of the county clerk, the following certificate:

### PHYSICIAN'S CERTIFICATE.

Know all men by these presents, that C. H. Carson, a resident of Kansas City, in the county of Jackson and State of Missouri, has this day complied with the requirement of the law of the State of Missouri, entitled, An Act to regulate the practice of medicine and surgery in the State of Missouri; approved April 28, 1877; by filing a copy of a diploma sworn to by him, duly issued to him on the 2nd day of June, 1879, by the American Health College of Cincinnati, which said college is located in the city of Cincinnati, State of Ohio, and is duly established under and by virtue of the laws of the State of Ohio. Now therefore the said C. H. Carson is hereby authorized to practice the profession of medicine and surgery in the county of Jackson under and in accordance with the provisions of said act.

In testimony whereof I have hereunto set my hand and affixed the seal of the said county court of said county at office in the city of Independence, this 15th day of May, 1880.

W. Z. HICKMAN, Clerk.

[SEAL]                    By B. G. WILSON, JR., D. C.

I. The contention of the State is that this court is restricted to a review of the record proper, for the reason it appears that the court, after finding defendant guilty, proceeded to impose its sentence before the defendant had filed his motion for a new trial, and as the statute provides in criminal cases the motion for a new trial and in arrest of judgment must be filed before sentence, the exceptions saved on the trial and attempted to be reviewed by the motion cannot be considered by this court. [Secs. 2689 and 2690, R. S. 1899.] In State v. Rosenblatt, 185 Mo. 114, it appeared the defendant withdrew his plea of not guilty and pleaded *guilty* and *by agreement* his punishment was assessed at imprisonment in the county jail for six months. Afterwards he filed his motion in arrest, and it was held too late, but as the indictment was a part of the record proper it was fully considered on his writ of error. Afterwards in State v. Pritchett, 219 Mo. 696, the

jury found defendant guilty and assessed his punishment. ''Whereupon the defendant was informed by the court that he had been convicted of murder in the second degree and his punishment assessed at ten years in the penitentiary, and the court asked him if he had any legal cause to show why judgment should not be pronounced against him according to law, and, the defendant failing to show such cause, judgment and sentence was passed upon him in accordance with the verdict.'' Thereafter defendant filed his motion for new trial, and the question was whether it was not too late and whether he had not waived his right to file a motion for a new trial and it was ruled he had waived it. It will be observed that in Rosenblatt's case, he pleaded guilty and his punishment was assessed by agreement and he was sentenced and he then filed his motion in arrest, and in Pritchett's case, he was expressly called upon by the court to show cause why the sentence should not be pronounced and he made no showing. In this case the record discloses that when the court came to pass upon the case, he announced his reasons for his verdict, and immediately, without giving counsel for defendant opportunity to file a motion for a new trial, rendered his judgment, to which action of the court the defendant at the time by his counsel excepted and gave notice that he would file his motion for a new trial within the statutory time, and within the four days did in fact file his motion for a new trial. Thus an entirely different case, on the facts, is presented. It is obvious that there was no waiver of his right to file his motion, and that he could not have acted more promptly. If it is to be held that the right to review errors alleged to have been committed during the trial can be cut off by the court pronouncing the sentence before any opportunity is afforded to file a motion for a new trial, the statute affords no protection to a defendant against errors which may occur during the trial and will be a dead letter. As the de-

State v. Carson.

fendant promptly excepted to this action of the court and gave notice of his motion and filed it within the time allowed by positive statute, we think he did all that the law demanded at his hands and that he did not lose the benefit of his motion.

The failure of the court to set aside its sentence after counsel excepted and gave notice of his motion, was, we are convinced, an inadvertence, in view of its subsequent action in considering the motion, but to hold that such a failure requires the motion to be ignored would set a dangerous precedent, and one which the Legislature never intended. Accordingly, if necessary, the exceptions will be duly considered.

II.   It appears that the defendant on the 15th day of May, 1880, filed a copy of his diploma from a medical college in the city of Cincinnati, sworn to by him, as required by the Act of the General Assembly of Missouri, approved April 28, 1877, and thereupon was duly registered on the roll of physicians and surgeons in the office of the clerk of the county court of Jackson county, and received a license, reciting these facts, under the hand and seal of the county clerk.

The information was filed under the Act of 1901, Laws 1901, p. 208, which provided, in section 5 thereof, that: "Any person *except physicians now registered,* practicing medicine or surgery in this state, and any person attempting to treat the sick or others afflicted with bodily or mental infirmities without first obtaining a license from the State Board of Health, as provided in this act, shall be deemed guilty of a misdemeanor," etc.   It is conceded defendant has never received a license to practice medicine from the State Board of Health.   So that the question is, was the defendant, by reason of his registration under the Act of 1877, "a physician now registered" within the meaning of the Act of 1901?   The state insists he was not, the defendant that he was.

After the defendant was duly registered under the Act of 1877, the Legislature passed the Act of 1883, (Laws 1883, p. 115). This act provided that every person practicing medicine and surgery should possess the qualifications required by that act. If a graduate of medicine, he should present his diploma to the State Board of Health for verification as to its genuineness, and if found genuine the board should issue him a license. If not a graduate, the person practicing medicine should present himself to the said board and submit himself to such examination as it might require, and if satisfactory the board should license him. This act expressly exempted students who might prescribe under the supervision of a preceptor, and did not apply to gratuitous services rendered in cases of emergency nor to commissioned surgeons of the United States Army, Navy and Marine Hospital service. In a subsequent section it was provided, that the act should not apply to those that had been practicing medicine five years in this state prior to the enactment of that law. The learned criminal court held that a physician registered under the Act of 1874 was a registered physician within the meaning of the law of 1901, and a physician registered under the Act of 1877, five years before the Act of 1883 went into effect, would be registered within the purview of the law of 1901, but inasmuch as defendant was not registered until 1880, less than five years before 1883, he was not a registered physician within the meaning of the law of 1901. But an examination of the law of 1883 reveals that it contained no provision as to prior registration. It merely provided that five years' practice should exempt a physician from its provisions requiring a license from the board of health. The construction which the state seeks to have us give the Act of 1901 would necessitate our amending the statute so that it would read: "Any person except physicians, now registered and qualified to practice under the Laws of 1883." Defendant

was not prosecuted for violation of the Act of 1883 while it was in force. That act was in turn repealed by the Act of 1901, and five years' practice no longer afforded protection. Thus if a physician had practiced five years before 1883, but was not registered, he would clearly fall under the condemnation of the Act of 1901, because not registered. What effect then had the Act of 1901 upon the registration of defendant's diploma and certificate in 1880. The diploma was registered under the law of 1877, and no subsequent act required or permitted it to be registered again. While it might or might not have protected him from prosecution during the life of the Act of 1883, what was there to prevent the Legislature repealing the Act of 1883, as it did, and providing that his registration under the Act of 1877 should protect him from prosecution and permit him to continue his practice? No act of the Legislature had revoked the license the state had granted him in 1880, and no tribunal authorized to revoke it had done so. Even if it should be said the Act of 1883 impliedly rendered his registration ineffective, it cannot be doubted that the Legislature could restore its efficacy by express provision as it did in 1901. We are unable to see any substantial reason why a physician registered under the Act of 1874 should be within the exception to the Act of 1901, and one registered under the Act of 1877, under the broad language of the exception of the Act of 1901, does not also fall within the Act of 1901. Certainly the defendant was a registered physician, and it was competent for the Legislature to make that registration authority to continue the practice even though no such right attached to it under the Act of 1883. The learned criminal court took the view that if defendant had practiced medicine five years prior to the enactment of the law of 1883, he would have been protected from this prosecution, as he would then have been a "registered physician" within the law of 1901, but the Act

of 1901 makes no reference to an actual practice for any length of time, neither does it specify a registry under any particular act, either 1874, 1877 or 1883. It is clear that if defendant had practiced medicine five years before 1883 but was not registered under some law, he had no right to practice under the exception to the Act of 1901. The conclusion we have reached on this question is supported by the decision of the Kansas City Court of Appeals in State v. Morgan, 96 Mo. App. 343, l. c. 345-6, and by the St. Louis Court of Appeals in State v. Hellscher, 149 Mo. App. 230, in the first of which it was ruled that, owing to the saving clauses in the subsequent acts, the competency of a physician to practice medicine under the Act of 1874 had not been interfered with by subsequent legislation, and in the latter of the two that the Act of 1907 applied only to those physicians who had not been licensed or registered as physicians prior to the Act of 1901, and that an information which failed to charge that the accused was a physician "not registered as such on or prior to March 12, 1901" was fatally defective. Our conclusion is that as defendant was concededly registered and licensed under the Act of 1877, he came squarely within the exception to the Act of 1901, as "a physician now registered," and that no subsequent act of the Legislature has revoked the license given him under the Act of 1877, and therefore the first instruction of the court requiring him to have been also licensed by the board of health was erroneous.

Having reached this conclusion we deem it unnecessary to pass upon the numerous other questions so ably discussed by counsel on both sides as to the sufficiency of the information and like questions. It is to be noted that defendant is charged in this information with the single offense of practicing without a license from the board of health and without being a physician registered according to law. He is not be-

fore us on a charge of misconduct which would have justified the State Board of Health in revoking his license. The facts were fully developed and there is no occasion for remanding the cause for a new trial.

The criminal court upon the admitted and established facts should have acquitted the defendant, and for refusal so to do its judgment is reversed and the defendant discharged.

*Burgess* and *Kennish, JJ.,* concur.