## WILLIAM BARTON, Respondent, v. C. E. Faeth, Appellant.

### Kansas City Court of Appeals, April 3, 1916.

1. **DAMAGES: Collision: Excessive Speed.** The plaintiff sued to recover damages to his electric car, caused by a collision with a seven passenger gasoline car driven by defendant's chauffeur. The defendant's car was being driven at an excessive rate of speed on the wrong or left side of the street, when the collision occurred. The plaintiff's wife, who was driving, turned out for a car that was standing on the side of the road and after passing that started to turn to the right again, when the collision occurred. *Held*, that the evidence, as a whole, presents the issue of the defendant's negligence as one of fact which the court, sitting as a trier of fact has properly determined in favor of plaintiff.

2. ———: ———: ———. Where no declarations of law are asked or given in a law case tried without a jury, a judgment for the plaintiff will not be reversed, if it can be justified on any theory of law applicable to the evidence most favorable to the pleaded cause of action, but, if there is no evidence to support the judgment the appellate court will interfere though no declarations of law were asked.

3. **EVIDENCE: Witness: Res Gestae.** Testimony as to statements made by a defendant's chauffeur at the time of an accident is admissible, if it is part of the *res gestœ*, and if no objection is interposed at the introduction of such testimony, it will be deemed to have been waived.

5. **NEW TRIAL: Newly Discovered Evidence.** In order to afford a sufficient reason for the granting of a new trial because of newly discovered evidence, such evidence must throw additional light on the subject in controversy.

Appeal from Jackson Circuit Court.—*Hon. Harris Robinson,* Judge.

AFFIRMED.

*Hadley, Cooper & Neel* for appellant.

*Hogsett & Boyle* for respondent.

JOHNSON, J.—Plaintiff's electric car, driven by his wife who was its sole occupant, collided with a seven passenger gasoline car owned by defendant and driven by his chauffeur, and this suit is to recover damages for the injuries sustained by plaintiff's car in the collision. Defendant answered and filed a counterclaim for the damages to his car. Each party contends that the collision was caused by the sole negligence of the other. A jury was waived and the court rendered judgment for plaintiff on his cause of action and on the counterclaim. No declarations of law were asked or given. Defendant appealed and argues that the judgment is wholly unsupported by the evidence which shows beyond question that the collision was the result of negligence of Mrs. Barton in the operation of plaintiff's car.

The collision occurred shortly after five o'clock, May 1, 1914, on Gillham Road, a boulevard in Kansas City. Coming from the south this boulevard, which is one hundred feet wide, divides some distance south of Thirty-ninth street (an east and west street) into two branches, one called West Gillham Road—running northwesterly across Thirty-ninth street—and the other Harrison Boulevard, sometimes called East Gillham Road, running northeasterly. From the crotch of

this fork north to Thirty-ninth street, a distance of about one hundred and twenty-five feet, is a triangular flower bed, the apex or nose of which points south and is slightly rounded. Each of these branch roads or boulevards is approximately fifty feet wide, about half the width of the main or parent road, and their center lines produced southward meet and merge into the center line of the main road at a point about one hundred feet south of the apex of the triangle. At that point a person driving north along the center line of the main road and purposing to follow the center line of Harrison boulevard would enter the curve from a north to a northeasterly course and at a point opposite the place of the collision his line of travel along that curve would be twenty-five, or perhaps thirty, feet east of the center line of the main road produced northward to the apex of the triangle. A driveway thirteen feet and six inches wide connecting stables of the Park Board entered from the east at the junction of Harrison Boulevard with the main road and the south line of this driveway, if prolonged westward, would be fifty feet south of the triangle. A maple tree which stopped the automobile of defendant after the collision, stood about eight feet north of the north line of this driveway and thirteen and seven-tenths inches southeast of the point of collision which approximately was on the east line of the main road where it merged on a curve into the southeast boundary line of Harrison Boulevard.

Defendant's automobile running down grade at a speed variously estimated by the witnesses at from eighteen to thirty miles per hour came from the northeast on Harrison Boulevard pursuing a course near to but on the left of the center line. At the same time the witness Breyfogle was approaching in his automobile from the northwest on West Gillham Road at about the same speed and distance from the junction. Just

west of the latter road young people were playing on a tennis court and Breyfogle observed that defendant's chauffeur who was looking westward across the triangle had his attention centered either on the tennis court or on Breyfogle's car and did not appear to know of the presence of the electric car which was coming from the south, until the two cars were about fifteen feet apart when suddenly becoming aware that a collision was imminent, the chauffeur (still on the wrong side of the road) instead of turning to the right turned on a sharp curve to the left and the two cars collided at the east property line.

The chauffeur and other witnesses for defendant testified to facts tending to show that the abrupt turning of defendant's car to the left just before the collision was compelled by an eccentric and not to be anticipated turning of the Barton car from its apparent course to one which brought it into the path of defendant's car under conditions which made it impossible for the chauffeur to avoid a collision, either by stopping or swerving his car to the right. In substance they say that the Barton car, instead of indicating a purpose of its driver to turn into Harrison boulevard, proceeded northward towards the apex of the triangle as though to proceed along West Gillham road, until it reached a point approximately twenty-five feet west of the Harrison Boulevard course when, suddenly and without warning, it turned east almost at right angles to the course it had been pursuing and ran straight across in front of defendant's car which was following the center line of Harrison Boulevard. There were no other cars or vehicles in the way but defendant contends that the chauffeur in turning sharply to the left took the only chance of escape left open to him, since the cars were too close for a collision to be avoided by stopping and a turn to the right inevitably would have resulted in a straight head-on collision.

Counsel for defendant insist that this description of the collision finds no substantial contradiction in the evidence of plaintiff and is made indisputable by an admission of Mrs. Barton (who was allowed to testify, without objection to her qualifications as a witness) that the accident occurred about twenty-five feet south of the apex of the triangle. This was brought out on cross-examination and is much relied upon by defendant as an admission that the Barton car ran to a point twenty-five feet south of the apex which, as stated, was twenty-five feet west of the Harrison Boulevard center line, and then turned squarely eastward. We think such an inference cannot legitimately be drawn from what Mrs. Barton said. The fact disclosed by all the evidence is that the accident or collision occurred on, or very near, the east boundary line of the road, at least fifty feet east and approximately twenty-five feet south of the apex of the triangle, and it is obvious from this particular bit of testimony, when read in the light of the other testimony of this witness and of the undisputed facts of the collision, that she was merely stating how far south of the apex the place of collision was, without reference to other directions.

There is substantial evidence introduced by plaintiff to show that the Barton car at no point failed to keep to the east or right side of the Gillham-Harrison median line. Coming up Gillham road it ran on the east side but there was an automobile standing in the road near the east line in front of the Park Board stable and the Barton car curved towards the center of the road to pass around that car and then back towards a course near the east line and was thus drawing away from the middle of the road when the collision became imminent because of the facts that defendant's car was running at excessive speed on the left side of the road and the chauffeur was inattentive to the course in front of him. The speed of the Bar-

Barton v. Faeth.

ton car at no time exceeded seven or eight miles per
hour, while the speed of defendant's car, as shown by
plaintiff's evidence, was from twenty-five to thirty
miles an hour. Ordinances of Kansas City plead-
ed and introduced in evidence prescribed a speed limit
of fifteen miles per hour on such boulevards and pro-
vided that "A vehicle meeting another shall pass on
the right."

Where no declarations of law are asked or given
in a law case tried without a jury a judgment for the
plaintiff will not be reversed if it can be justified on
any theory of the law applicable to the evidence most
favorable to the pleaded cause of action. [Paine v.
O'Donnell, 178 S. W. l. c. 874; Winfrey v. Matthews,
174 Mo. App. 713; Sommer v. Bryson, 168 Mo. App.
335.] Of course if there is no evidence to support the
judgment the appellate court will interfere though no
declarations of law were asked. [Hubbard v. Fuchs,
164 Mo. l. c. 430.] Counsel for defendant recognize
these rules and exert themselves to maintain their
position that the evidence shows indisputably that the
collision was caused by the sole negligence of Mrs.
Barton.

We do not entertain this view of the evidence. We
must assume—there being substantial evidence to sup-
port such conclusion—that defendant's car approach-
ed the point where the danger of a collision arose at
speed in excess of that prescribed by law and in viola-
tion of the rule requiring it to run on the right side of
the road. It is negligence *per se* for an autoist to run
his car in excess of ordinance speed and if such negli-
gence is a contributing cause of the infliction of an in-
jury to him or his car, he will not be allowed to re-
cover damages from another whose negligence also
contributed to the injury. The court could not well
have done otherwise than to find against defendant
on his counterclaim, since the fact of the excessive and

unlawful speed of his car is established Unquestionable such negligence coupled with negligence in being on the wrong side of the road which is just as clearly established were factors in the production of the injury, since it is inconceivable that the injury would or could have occurred if defendant's car had approached the junction on the right side of the road at speed not exceeding fifteen miles per hour. And on the hypothesis of plaintiff's evidence, the collision could not have occurred if the chauffeur had given proper attention to the way in front of him and had made any reasonable effort to turn his car into its proper course. The facts that he was negligent in the respects referred to, and that such negligence if not the sole cause was a contributing cause of the injury, make the question of plaintiff's right to recover compensation for his loss depend on the solution of the question of whether or not Mrs. Barton, the driver of his car, was guilty in law of negligence which was a contributory cause of the collision. This question, in turn, depends on whether she was running her car on the east side of the Gillham-Harrison median line, and, therefore, along a course she had a right to expect would not be intersected by a southbound car, or, as defendant contends, had deviated to a course tending towards the West Gillham Road and then suddenly and without warning turned sharply east across the path of defendant's car. The latter theory of the causal events is opposed by substantial evidence and, though it has the support of a number of witnesses, is not convincing or even plausible. If, as defendant insists, the Barton car ran straight north almost to the apex of the triangle before its eccentric turn, it had to travel at least twenty-five feet to reach the path of defendant's car which then must have been one hundred feet from the point where the respective courses of the cars would intersect and, therefore, at a place where a slight reduction of speed,

or turn to the right, would have sufficed to prevent a collision. The statements of the chauffeur that he saw the Barton car when it turned, that it was then at the apex of the triangle, and that his car was only about "four or five feet from her," are so self-contradictory as to be unbelievable. At no time was his car within twenty-five feet of that point if he pursued the line of travel he says he did, and if he was closer than one hundred feet to her car when it turned, it could not have intersected his line of travel at the respective rates of speed until after his car had passed.

We need not go further into an analysis of the evidence; suffice it to say that the evidence, as a whole, presents the issue of Mrs. Barton's alleged negligence as one of fact which the court, sitting as a trier of fact, has settled in favor of plaintiff. The demurrer to the evidence was properly overruled.

. The witness Breyfogle was permitted to testify to a statement made to him by the chauffeur at the scene of the collision, shortly after it occurred, relating to the cause of the collision. Defendant contends this was hearsay evidence which should not have been admitted, but since no objection on that ground was interposed at the time the evidence was offered, the objection was waived and cannot now be considered. [Jordan v. Telephone Co., 136 Mo. App. l. c. 202; De-Maet v. Storage etc. Co., 231 Mo. l. c. 620; Longan v. Weltmer, 180 Mo. 322.]

Mrs. Barton testified that she was going to her home which was at 31st and Harrison streets, a mile or more to the northeast of the place of collision and, over the objection of defendant, was permitted to state that she intended to proceed along Harrison Boulevard—her most direct course. There are instances where the plan or intention of an actor or doer is held to possess probative value in an action involving a

judicial inquiry into the nature of the act or deed. [Chambers v. Chambers, 227 Mo. l. c. 282; Wigmore on Evidence, sec. 102.] We find the testimony of the witness that she was homeward bound was not the statement of a secret plan or intention, but of an act in process of execution and her statement that in its execution she was in the very act of passing into Harrison Boulevard, likewise was that of an act which belonged to the *res gestae* and, therefore, did not relate to the exposition in court of a secret intention. In any event, the judgment should not be disturbed because of the admission of this evidence. The same particularity in the admission of evidence is not required at trials before the court as at trials before a jury. The presumption is that in the final determination of the case the court considered only competent and relevant evidence. [McCullough v. Insurance Co., 113 Mo. l. c. 616; Laumeier v. Gehner, 110 Mo. l. c. 126; Lewis v. Frankle, 158 Mo. App. l. c. 263.] And unless the evidence is of such an erroneous and potent character that it must have swayed the mind of the court to the injury of the losing party, the judgment should not be set aside because of its admission.

In view of the conceded fact that defendant's car was running in excess of ordinance speed, it is difficult to perceive any good reason for the contention that prejudicial error was committed in allowing Mrs. Barton to testify that the car was "going fast" and that objection must also be ruled against defendant.

The point of newly discovered evidence in defendant's motion for a new trial did not afford a sufficient reason for granting a new trial. The newly discovered evidence consisted of a map of the scene of the collision drawn to scale and a photograph of the place. The map and photograph do not throw any additional light on the subjects in controversy and if they did, there was no reason for defendant to wait until judg-

ment had gone against him before producing them in court. In short, the new evidence was merely cumulative and no diligence was shown.

There is no prejudicial error in the record and the judgment is affirmed.

All concur.