## ST. LOUIS AND THE KANSAS CITY

# COURTS OF APPEALS

AT THE

### OCTOBER TERM, 1898.

*( Continued from Volume 76.)*

JOHN C. HEMAN, Respondent, v. MARTIN C. MCNAMARA
et al., Defendants; HORACE DUNAWAY,
Appellant.

**St. Louis Court of Appeals, November 29, 1898.**

1. **Statutory Construction of Section 8172, Revised Statutes 1889.** A statute designed to abolish a harsh and defective rule and to increase the scope and efficiency of the practice act, possesses the essential elements of a remedial enactment, and must be liberally construed.

2. ———. To subject such a statute to the rigid, strict and literal construction applicable to penal statutes, or statutes against common right, would involve a violation of elementary principles of law, as well as the necessary conclusions of reason.

3. ———. The phrase "as provided in this chapter" was put in the act for descriptive purposes only and not for the exclusion of one of the express objects of the act.

4. ———: SET-OFFS OR COUNTERCLAIMS. The act must be construed to mean the survival either of set-offs or counterclaims in the cases provided for.

Heman v. McNamara.

5. ——: ——. In the case at bar the trial court erred in denying defendant Dunaway the right to proceed to try the counterclaim presented in his answer.

6. Tax Bill: NECESSARY PARTY: CROSS ACTION. In the case at bar if defendant Dunaway was the sole owner of the land sought to be charged with the tax bill, then he was a necessary party defendant to this suit in order to charge his interest or to give the court jurisdiction.

7. ——: ——: CANCELLATION OF TAX BILL. Under the practice act and the amendment comprised in section 8172 of the Revised Statutes, defendant, in the case at bar, was entitled to maintain his cross action for the cancellation of the tax bill, despite the dismissal of plaintiff's suit.

OPINION BY JUDGE BIGGS.

8. Statutory Construction of Section 8172, Revised Statutes 1889. Since section 8172, Revised Statutes 1889, provides for a practice unknown to the common law a strict construction must be adopted—that is the statute must not be extended beyond its very letter.

9. ——: SET-OFF: COUNTERCLAIM. The legislature used the words set-off and counterclaim interchangeably; or it referred to a counterclaim in the nature of a set-off.

10. ——: ANSWER: EQUITABLE MATTER. In the case at bar the equitable matter in the answer (if sufficient for any purpose) not only tends to show a complete defense to the action, but it is sufficient to form the basis of an independent equitable action which makes it an equitable counterclaim or cross-action.

*Appeal from the St. Louis City Circuit Court.*—HON. JACOB KLEIN, Judge.

REVERSED AND REMANDED (*with directions*).

HICKMAN P. RODGERS for respondent.

The claim of defendant Dunaway is not a counterclaim. It denies that plaintiff has a cause of action, and matter which shows that plaintiff never had a cause of action which the law would enforce, is no counterclaim. 22 Am. and Eng. Ency. Law, 1893, pp. 378 and 379; Holzbauer v. Heine, 37 Mo. 443; Jones v. Moore, 42 Mo. 413. Equitable matter and prayer for relief can constitute a defense only, but not a counterclaim

as against an action at law. Jones v. Moore, 42 Mo. 413. Appellant admits that his claim is not a set-off, and as it is not a counterclaim, but merely an answer or defense, it goes without saying that he had no right to be heard after plaintiff dismissed as to him. R. S. 1889, sec. 2084. Chapter 147, Revised Statutes 1889, does not provide for anything but set-offs. By the terms of section 8172 its application is limited to matters "provided in this chapter" (147). Appellant's plea to plaintiff's petition was, whether answer or cross-bill, intended as one in equity, and, as it contained no grounds for equitable relief, the trial court committed no error in denying him a hearing on it. Holzbauer v. Heine, *supra*. *First.* Said plea sets up a number of merely technical defects in the details making up the tax bill, which in no manner affect the substantial rights of the parties, and which, if true, would not constitute a good defense or cause of action. Marionville v. Henson, 65 Mo. App. 406. *Second.* And does not aver that Dunaway tendered the contractor the reasonable value of the work. 25 Am. and Eng. Ency. Law, 1894, p. 572, Eq. Relief. Johnson v. Duer, 115 Mo. loc. cit. 378; Verdin v. St. Louis, 131 Mo. (dissenting opinion of Sherwood, J., loc. cit. 142, and cases there cited). *Third.* It is nowhere alleged that respondent had no valid contract with the city for doing the work in issue. *Fourth.* The maxim, "He who seeks equity must do equity," applies to appellant's attitude. "One who seeks to restrain by injunction any act for the collection of money, must first tender what is justly due." McDaniel v. Water Works Co., 48 Mo. App. loc. cit. 281.

Benj. J. Klene for appellant.

The question presented in this case for determination will depend upon the construction of section 8172,

Revised Statutes 1889, which is as follows:    *   *   *
R. S. 1889, sec. 8172, p. 1904.   The right of set-off did
not exist at common law, and is purely of statutory
origin.   Fink v. Bruihl, 47 Mo. 173; State ex rel. v.
Eldridge, 65 Mo. 584; Kortjohn v. Bank, 63 Mo. App.
166; Haseltine v. Thrasher, 65 Mo. App. 344.   Under
the statutory term "counterclaim" is included what
was before known as matter of set-off and recoupment.
Gordon v. Bruner, 49 Mo. 570.   While the term "coun-
terclaim" includes set-off, there is nevertheless a clear
distinction between a counterclaim and a set-off.   A
set-off must be a liquidated mutual demand, while a
counterclaim is good whether the damages are liqui-
dated or not.   McAdow v. Ross, 53 Mo. 199.   Before
the enactment of section 8172 the nonsuit of plaintiff,
or dismissal of his suit, prevented the continuance of
proceedings on the counterclaim, because the cross-
action was held to be a mere dependency on the com-
plaint.   This was true of the counterclaim as well as
of set-offs.   Nordmanser v. Hitchcock, 40 Mo. 178;
Martin v. McLean, 49 Mo. 361; Fink v. Bruihl, 47 Mo.
173.   This statute was designed to prevent circuity of
action and expedite liquidation, was highly beneficial
and, like all beneficial statutes, should be liberally con-
strued.   Lionberger v. Bank, 10 Mo. App. 499.   This
is especially so when such construction prevents ab-
surdity, hardship or injustice to public convenience
and to avoid all prejudice to public interests.   State ex
rel. v. Marshall, 48 Mo. App. 560.   A rule of construc-
tion will not be adopted which will defeat the act in
whole or part, if the language will admit of a construc-
tion which will sustain the law.   St. Joseph v. Landis,
54 Mo. App. 315.   In cases of doubt that construction
will be adopted which will give a reasonable effect, for
such is the presumed intention of the legislature.   State
v. Bennett, 102 Mo. 356.   Words may be stricken out

in order to harmonize all its provisions. Deardorf v. Roy, 50 Mo. App. 70. The general purpose and object of a statute should never be overlooked in its construction and application. Ross v. Railroad, 111 Mo. 18. When the language of the statute leads to manifest contradiction of the apparent purpose of the statute, a construction should be given which may modify the literal meaning of the words. Cole v. Skrainka, 105 Mo. 303. The reason of the law is its life; and in determining its meaning it is often useful to recur to the objects and purposes, to ascertain how far they may be promoted or defeated by any proposed construction of it. Bank v. Skeen, 101 Mo. 683; Dowdy v. Wamble 110 Mo. 280, p. 285. And that construction should be given which is most favorable to its life and purpose. State ex rel. v. Finn, 8 Mo. App. 341. The cardinal principle of interpretation is to unfold the true intent of the legislature for the text which it has given us, or in which it has expressed it. St. Louis v. Lane, 110 Mo. 254. The consequences of any proposed interpretation should be considered in determining the probable intention of the enactment of the law. Bowers v. Smith, 111 Mo. 45; Kane v. Railroad, 112 Mo. 34.

BOND, J.—On the twenty-sixth of September, 1894, a special tax bill for the reconstruction of sidewalks on Ewing avenue was issued against McNamara and wife, the then owners of an adjoining lot. On April 9, 1896, the lot was conveyed to defendant Horace Dunaway. On the fourteenth of September thereafter the owner of the bill instituted the present action for its enforcement, making McNamara and wife and Dunaway defendants. The other defendants failed to appear. Dunaway answered setting up certain facts and circumstances showing that the work of reconstruction was

done, and the tax bill issued, in violation of law, for which reasons he averred that the tax bill was void, wherefore he prayed the court to enjoin the suit of plaintiff and on final hearing to cancel and for naught hold the said tax bill as a cloud on his title to the property and for general relief. The reply took issue upon the allegations of the answer. When the cause was called for trial both parties announced themselves ready, whereupon plaintiff dismissed his suit as to defendant Dunaway. Defendant Dunaway insisted that such dismissal should not prejudice his right to try the issues tendered by his answer, and secure the relief therein prayed for. The court, however, ruled that the dismissal of plaintiff's suit carried with it the cross-suit, to which defendant duly excepted. A judgment was rendered for plaintiff for $243, which was declared a lien upon the property of defendant Dunaway. After the overruling of his motion for a new trial defendant appealed to this court.

The controlling question in this case is the correctness of the action of the trial court in denying defendant Dunaway the right to proceed to try the counterclaim presented in his answer. In the discussion CONTROLLING question. of this question it is important to note that the matters alleged in the answer were not merely a statutory set-off, but were such as to constitute a countersuit for affirmative equitable relief. That there is an essential distinction between a set-off and a counterclaim appears from the language of the statutes and the express rulings of the supreme court on the subjects. In defining a counterclaim the statute provides that it should be such as to authorize a several judgment in favor of defendant against the plaintiff, and should arise out of *one* of the following ways: "*First*, a cause of action arising out of the contract or

transaction set forth in the petition as the foundation of plaintiff's claim, or connected with the subject of the action; *second*, in an action arising on contract, any other cause of action arising also on contract, and existing at the commencement of the action.'' The statute further provides that the counterclaims so arising shall be valid matter of cross-suit by answer, whether their subject-matter is legal or equitable, or both. R. S. of 1889, sec. 2050. Under the first subdivision of the statute a counterclaim may be interposed in the same form, whether plaintiff's action be for a tort or upon a contract, for the facts being precisely the same in both phases of the action the counterclaim arises upon the express terms of the statute and is equally available. It is also immaterial whether it presents a legal or equitable cross-suit upon liquidated or unliquidated demands. Ritchie v. Hayward, 71 Mo. 560; McAdow v. Ross, 53 Mo. 199; Pomeroy on Remedies, 788; Swope v. Weller, 119 Mo. loc. cit. 564. Under the second subdivision of the statute when sued on a contract the defendant may set up a counterclaim on any other contract with plaintiff, if a cause of action existed thereon when the original suit was begun. Green v. Conrad, 114 Mo. 677. A set-off is not co-extensive with a counterclaim, but lacks many of its essential features. A set-off can be pleaded only in cases of mutual debts between the plaintiff and the defendant, hence it can never be based upon an unliquidated demand. R. S. of 1889, sec. 8160. (This distinction was overlooked by Judge Holmes in Jones v. Moore, 42 Mo. 413, as is shown in the subsequent cases, Hay v. Short, 49 Mo. 139; McAdow v. Ross, 53 Mo. loc. cit. 206.) On the trial of a cause wherein a set-off or counterclaim is pleaded, the defendant is entitled to judgment for any balance found to be due him from the plaintiff or for any affirmative relief to which he may be entitled. R. S. 1889, secs. 8167 and

2207. Notwithstanding these provisions of the practice act it was ruled prior to its revision in 1889, that by dismissing his suit plaintiff could prevent a recovery for a set-off or counterclaim pleaded in that action, and compel the defendant to resort to a new suit for redress. Nordmanser v. Hitchcock, 40 Mo. 178; Fink v. Bruihl, 47 Mo. 173; Martin v. McLean, 49 Mo. 361; Ficke v. Ficke, 62 Mo. 335. The case last cited criticises the one first cited as not resting upon a correct view of the practice act as it then existed, and holds that cross-bills in divorce suits may be proceeded with although plaintiff dismisses his petition, or does not appear upon the trial. In further discussing the question Judge Bliss states (47 Mo. loc. cit. 175) that the fact that defendant is entitled to a judgment over for the balance due him on a set-off furnishes *"a good reason"* for the adoption of a statutory amendment, similar to that in other states qualifying the plaintiff's right by suffering a nonsuit to cut off such recovery. He also added "but until it is adopted I can not see how the express right of the plaintiff can be so qualified." In response to the opinion of Judge Bliss suggesting such statutory amendment, as well as to subserve simplicity of procedure and to prevent circuity of action, the legislature in 1889, when revising the whole subject, added to our practice act the following section: "Whenever a set-off or counterclaim shall be filed in an action, as provided in this chapter, it shall be deemed in law and treated as an independent action begun by the defendant against the plaintiff, except in the cases enumerated in section 8161 of this chapter; and the dismissal or any other discontinuance of the plaintiff's action, in which such set-off or counterclaim shall have been filed, shall not operate to dismiss or discontinue such set off or counterclaim, but the defendant so filing such set-off or counterclaim may, notwithstand-

Heman v. McNamara.

ing such discontinuance or dismissal of the plaintiff's action, prosecute the same against the plaintiff in the same manner and with the same force and effect as if he had originally begun the action of his set-off or counterclaim against the plaintiff, and in such case the defendant so prosecuting such set-off or counterclaim shall be subject to all the rules applicable to plaintiffs in civil actions and other procedure, and the set-off or counterclaim shall be proceeded with in all respects as if the action had originally been begun by the defendant against the plaintiff.'' R. S. 1889, sec. 8172.

If the above section means that only set-offs, but not counterclaims shall survive the dismissal of the suit in which they are filed, the ruling of the trial court was correct, for no matter of set-off was alleged in the answer of Dunaway; but if the section means that a counterclaim equally with a statutory set-off may be prosecuted, notwithstanding the dismissal or discontinuance of the suit in which it is filed, then the ruling of the trial court was manifestly erroneous. The declared object of the statute is to enable a party when sued to enforce by cross-action in the same cause certain liabilities on the part of the plaintiff, irrespective of the fate of the plaintiff's action. In so doing it corrects and enlarges the rule of procedure governing the rights of a defendant under the previous state of the law by enabling him in one action to prosecute to a conclusion all matters of set-off or counterclaim against the plaintiff. Under the old rule if the plaintiff dismissed his suit this could not be done. The old rule worked much inconvenience and injustice to suitors. It was opposed to the whole spirit and purpose of our practice act, whose single aim is to furnish a convenient, simple and comprehensive method for the enforcement of legal and equitable rights and redress of legal and equitable wrongs as a

OBJECT of statute.

substitute for the technical, complex and artificial system of legal procedure wrought out by the common law in an early state of society.  A statute designed, like the one under review, to abolish a harsh and defective rule and to increase the scope and efficiency of the practice act, possesses the essential elements of a remedial enactment, and according to the authorities everywhere must be liberally construed.  In defining such a statute Sutherland on Statutory Construc-

STATUTORY construction liberally construed.

tion, section 409, uses the following language: "In the modern sense remedial statutes not only include those which so remedy defects in the common law, but defects in our civil jurisprudence generally, embracing not only the common law, but also the statutory law." Ibid, section 437. "Statutes are remedial which are intended to promote the convenience of suitors."  An instance of remedial statutes is given in Black on Interpretation of Laws, page 310, in the following language: "In the next place, statutes made relative to the administration of justice in the courts, and designed to render the same more simple, speedy or efficacious, are to be liberally construed for the attainment of that important object."  Endlich on the Interpretation of Statutes, section 107, in speaking of remedial statutes, uses the following language: "The object of this kind of statutes being to cure a weakness in the old law, to supply an omission, to enforce a right, or to redress a wrong, it is but reasonable to suppose that the legislature intended to do so as effectually, broadly and completely as the language used, when understood in its most extensive signification, would indicate."  In speaking on the same subject Poetter's Dwarris on Statutes, page 73, uses the following language: "So it seems that a remedial statute may also have its application to and effect upon other existing statutes, and gives the

Heman v. McNamara.

party injured a remedy, in other words and for a more general definition, 'it is a statute giving a party a mode of remedy for a wrong where he had none, or a different one before; citing Blackstone. "Such a statute it is universally held is to be liberally construed and that everything is to be done in advancement of the remedy that can be given consistently with any construction that can be put upon it." To the same effect see Sedgwick on Construction of Statutory Law, page 32 and 309. As has been shown, the statute under review in this case was intended to render the administration of justice more simple and convenient than under the pre-existing law, by giving the defendant a remedy in the action wherein he was sued which he could not always obtain under the former rule, without resorting to a new and independent suit. It is therefore clearly and distinctly embraced within the foregoing definitions of a remedial statute. I have been unable to find any warrant of authority for subjecting such a statute to the rigid, strict and literal construction applicable to penal statutes, or statutes *against common right*. To do so, in my judgment, would involve a violation of elementary principles of law, as well as the necessary conclusions of reason. Roselle v. Harmon, 103 Mo. loc. cit. 343 and cases cited. Assuming that the foregoing authorities and the language of the act under review show it to be a remedial statute, the next step to be taken, *in the light of a liberal construction*, is to ascertain what was the intent of the lawmaker, which is always an unerring guide to the meaning of the statute. In carrying out the intent of the statute it is a familiar rule "that all the words of a law must have effect rather than that part should perish by construction." St. Louis v. Lane, 110 Mo. loc. cit. 258. If the intent can not be enforced by the preservation of all the words, then it is well settled "that the letter of a statute must

occasionally be cut down to conform to its evident
spirit and intent." Kane v. Railway, 112 Mo. loc. cit.
39. Or as the rule has been expressed by Mr. Endlich,
sec. 295, "where the language of a statute in its ordi-
nary meaning and grammatical construction leads to a
manifest contradiction of the apparent purpose of the
enactment, or to some inconvenience or absurdity,
hardship or injustice presumably not intended, a con-
struction may be put upon it which modifies the mean-
ing of the words and even the *structure* of the sentence,"
approved in Cole v. Skrainka, 105 Mo. loc. cit. 110.
As an aid to the discovery of the intent it is always
presumed that the legislature never intended to enact
an absurd law. Bingham v. Birmingham, 103 Mo. loc.
cit. 345; City of St. Joe v. Bank, 54 Mo. App. loc.
cit. 322.

The theory of the learned counsel for respondent
in reference to the construction of section 8172, *supra*,
is that the existence in the first sentence of the act of
the phrase "as provided in this chapter" obliterates
the entire sense of the word "counterclaim" preceding
that phrase, because the chapter of the revision of 1889
(chapter 147) wherein the act in question is inserted
treats of set-offs only. It is therefore argued that on
account of the inaccuracy of the application of this
phrase to the word counterclaim, that word loses all
meaning; or, if any meaning is to be given to it, then
the phrase in question loses its full meaning. Neither
this position nor the argument in its support can be
sustained. The full force of the term "as provided in
this chapter" in the act in question is

DESCRIPTIVE
term.

descriptive only. They were employed to
indicate the place in the revision of 1889,
where set-offs could be found, for the obvious reason
that the act in question excepted from its operation
certain set-offs; i. e., those contained in section 8161.

As there is no exception in the terms of the act with reference to counterclaims, it was unnecessary to use the phrase "as provided in this chapter" to indicate where counterclaims are treated of in the revision. The law entitling a defendant to set up a counterclaim by his answer is an integral part of the practice act of this state. R. S. 1889, sec. 2049 and 2050; McCulloughs Statute Annotation, page 222. This fact could not have been absent from the mind of the legislature when the act in question was passed at a session (1889) devoted to the revision of the laws. It being impossible to conceive that the legislature employed the term counterclaim without any knowledge of the substantive right afforded thereby during the long period of its statutory authorization and constant use in the administration of justice in this state, it is evident that the employment of the term counterclaim in connection with that of set-off in the act, was intended to bring within its operation the remedies and rights available under either word. Moreover the legislature could not have intended otherwise without enacting a statute unreasonable in the light of the motives and purposes of the proposed amendment. The obvious purpose of the act was to embrace a set-off or counterclaim. This is shown by the repetition of these words seven times in the body of the act. Now, if this is to be prevented by confining the relief of the act to set-offs only, then it will be made to appear that the legislature, although every reason which could be urged in favor of the grant of an additional remedy for a set-off would apply with greater force for the extension of the same right and benefit to a counterclaim and though the latter has greater scope and importance than the former, ignored these considerations in the enactment of a curative statute and restricted its effect to the more unimportant and inconsiderable of the two mischiefs to be remedied.

No such purpose can be ascribed to the legislature in view of the rule which forbids the indulgence of a presumption that it has enacted an absurd law. It being apparent, therefore, that the paramount purpose of the legislature by the act in question was to provide a remedy in cases of counterclaims, as well as in cases of set-off, the next question is, can that intent be carried out by the retention of all the words employed in the act? This question may be answered in the affirmative by construing the phrase "as provided in this chapter" to be applicable only to the word set-off and to have the same meaning which it would have had if it had been placed in the sentence between the word set-off and or, so that the sentence would read as follows: "Whenever a set-off, as provided in this chapter, or a counterclaim shall be filed in an action," etc. To give it a construction as if such a transposition, is in clear and exact accord with the rule quoted from Endlich on Interpretation, *supra*, and affirmed by our supreme court. This construction does not destroy the meaning of *any word* used in the act. It merely applies the phrase quoted "as provided in this chapter" to the word set-off and gives it full meaning as so applied. It is therefore also in accord with the rule that all the words of an act should have a fair and natural significance if consistent with the intent of the law. On the other hand, the construction contended for by respondent would result in the total loss of the meaning of the word "counterclaim," upon the notion that as it was not found in the particular chapter indicated by the foregoing phrase, the legislature did not intend it to be found in the chapter where it is treated of, but meant by it a mere repetition of the word set-off, so that as construed by respondent the act under review would read as if "set-off or set-off" instead

of "set-off or counterclaim" was repeated seven-times in the act.

Such a tautological jumble of words is in the teeth of every canon of construction applicable to an act of the nature of the one under review. It would result in the sacrifice of its plainly expressed intent and object to a senseless literalism accorded to a phrase which was put in the act for descriptive purposes only, and not for the exclusion of *one* of the express objects of the act.

My conclusion is that the act under review must be construed to mean the survival either of set-offs or counterclaims in the cases provided SURVIVAL of set-offs or counter-claims for. In my opinion this construction is necessitated by the remedial character of the act, the unequivocal purpose to embrace within its purview both set-offs and counterclaim manifested by the express and repeated use of these terms, and the motive of the general assembly, inspired by the previous state of the law, to prevent circuity of action for the remedies given under the practice act, as well as its design to enact a rational and wholesome measure of relief applicable, not partially, but to the entire field of affirmative redress which can be embraced in an answer either as a set-off or counterclaim. Holding these views I am constrained to dissent to those expressed in the opinion of Judge BIGGS in this case and to the ruling of the trial court.

If defendant Dunaway was the *sole* owner of the land sought to be charged with the tax bill, then he was a necessary party defendant to this suit in order to charge his interest or to give the court jurisdiction. Scheme & Charter, art. VI, sec. 25; Allen v. McCabe, 93 Mo. loc. cit. 144; affirmed in Newman v. City of St. Joseph, 126 Mo. 96. Under the practice act and the amendment comprised in section 8172 of the

Revised Statutes, he was entitled to maintain his cross action for the cancellation of the tax bill, despite the dismissal of plaintiff's suit, hence the ruling of the trial court to the contrary was error, for which the judgment herein is reversed and the cause remanded, with directions to reinstate the cause of action alleged against plaintiff in defendant's answer praying for affirmative relief, and to proceed to try the same.

Judge BLAND concurs in this opinion.

BIGGS, J.—This action is on a special tax bill issued for work done by the plaintiff in the reconstruction of a sidewalk in front of a lot on Ewing avenue. The bill was issued on September 26, 1894, and the defendant McNamara was named in the bill as owner. Subsequently to the issue of the bill but prior to the institution of the suit thereon, McNamara sold the property to the appellant Horace Dunaway, whom the plaintiff made a defendant in the action. Dunaway appeared to the action and as an equitable defense he set up in his answer certain alleged irregularities in the notice given to McNamara of the condition of the walk, and also certain formalities which were required in issuing tax bills, and which he averred were not observed in respect to the tax bill sued on, all of which he claimed rendered the bill void. He asked that the court declare the tax bill void and order its cancellation.

At the commencement of the trial the plaintiff offered to dismiss the action as to Dunaway. The latter objected if the effect of the dismissal was to deprive him of the affirmative relief which he asked for in his answer. The circuit court ruled that such an order would carry with it the alleged cross action of appellant. Thereupon on motion of plaintiff the court dismissed the suit as to Dunaway, to which the latter objected and excepted. Upon the proofs adduced

judgment was rendered against McNamara for the amount of the tax bill with special execution against the property. Dunaway has brought the case here for review.

The contention is that under a proper construction of section 8172, Revised Statutes of 1889, the ruling of the court as to the effect of the order dismissing the action as to appellant was wrong. The section reads:

"Whenever a set-off or counterclaim shall be filed in an action, as provided in this chapter, it shall be deemed in law and treated as an independent action begun by the defendant against the plaintiff, except in the cases enumerated in section 8161 of this chapter; and the dismissal, or any other discontinuance of the plaintiff's action in which said set-off or counterclaim shall have been filed, shall not operate to dismiss or discontinue such set-off or counterclaim, but the defendant so filing such set-off or counterclaim may, notwithstanding such discontinuance or dismissal of the plaintiff's action, prosecute the same against the plaintiff in the same manner and with the same force and effect as if he had originally begun the action on his set-off or counterclaim against the plaintiff, and in such case the defendant so prosecuting such set-off or counterclaim shall be subject to all the rules applicable to plaintiffs in civil actions and other procedure, and the set-off or counterclaim shall be proceeded with, in all respects, as if the action had originally been begun by the defendant against the plaintiff."

The first contention in support of the ruling of the circuit court is that as the section quoted appears in the chapter relating to set-offs, and as it is expressly stated that the section is to apply to claims "*filed under that chapter*," the legislature must have used the word "counterclaim" as identical in meaning with that of

"set-off," and that as the cross-action of Dunaway was clearly not a set-off, the action of the circuit court was right.   On the other hand, it is contended that, presumptively, the word counterclaim was used in its established judicial sense, and, therefore, the legislature did not intend to use the words "set-off and counterclaim" as identical in meaning.

The following rules of interpretation may throw some light on the question in dispute.   (1) Where a statute makes use of a word which has received a judicial interpretation the presumption will be that the word was used in that sense, unless a contrary intent appears.   (2) Where the language of the statute is clear, there is no room for construction, even though the court may be convinced, from outside circumstances, that the legislature intended something which is not warranted by the letter of the act.   In such a case the court has nothing to do with the consequences.   (3) The presumption is that the legislature did not intend an absurdity, and a construction will be adopted to avoid this, unless the intention is plain and unmistakable.   (4) In making changes in existing laws the presumption is that the legislature did not intend to go beyond what is exactly declared.   Thus a statute which provides for proceedings or a practice unknown to the common law must be strictly construed.   The foregoing rules are substantially laid down by Mr. Sutherland in his work on Statutory Construction (sections 255, 290, 324, 332, 333 and 400).

There is a recognized legal distinction between a set-off and counterclaim, although in common parlance the words are often used interchangeably.   As to the former the amount claimed must be liquidated, and there must be a mutual indebtedness.   These features are not essential to a counterclaim (McAdow v. Ross, 53 Mo. 199).   To give to the word counterclaim its

judicial meaning for which the appellant contends, we must strike from the section the words "as provided for in this chapter," for the chapter refers solely to set-offs. In favor of this construction the argument is presented that it would be absurd to say that the legislature intended that a set-off only should, in case of a dismissal of the initial suit, be treated as an independent action, when the same reasons for the enactment of such a law apply with equal force to counterclaim. I fully recognize the desirability of such a counterclaim, but I do not feel authorized to emasculate the section in order to produce such a result. The more reasonable construction is that the legislature in enacting the law used the words set-off and counterclaim interchangeably; or it referred to a counterclaim in the nature of a set-off, which is the case when a mutual indebtedness is admitted and the counterclaim or set-off is liquidated but exceeds the amount of plaintiff's demand. No other construction will give effect to all the words of the statutes. The construction is a strict one, but as the section provides for a practice unknown to the common law it must be adopted—that is the statute must not be extended beyond its very letter. In other words the best construction of such a statute is to construe it as near as possible to the rule of the common law. The foregoing are my individual views, and as I gather it from the briefs the circuit judge was of the same opinion. But my associates hold to the contrary. This makes it necessary to consider another proposition, of which we will now dispose.

It is urged by the respondent that the new matter set forth in Dunaway's answer (if sufficient for any purpose) constitutes a complete defense to the action, and for that reason it can not be treated as an equitable counterclaim. In support of this counsel relies on an

expression in the opinion in the case of Jones v. Moore, 42 Mo. loc. cit. 419. It was there said, "a cause of action which wholly defeats the demand of the plaintiff can not be a counterclaim. (Hobson v. Peirce, 12 N. Y. 156; Post v. Sprague, 12 How. Prac. 455; 1 Smith and Tiff. Prac. 378.) These authorities do not support the idea that an equitable defense may properly be called a counterclaim." The point in judgment in the Jones case was whether the equitable matter set up in the answer constituted a defense or counterclaim, or both. The court decided that it was a matter of defense only. To that extent is the decision binding on us. The statement in the opinion that the same matter can not be both an equitable defense and an equitable counterclaim, is obiter and is opposed we think to both reason and authority. Mr. Bliss in his work on Code Pleading thus states the law: "When the plaintiff has contracted to perform service or otherwise to do for, or deliver to, the defendant, upon suit for his service or other thing, or property delivered, if the defendant claims not only that the plaintiff has not performed, or fully performed his agreement but that he himself has suffered in consequence of the failure, the non or imperfect performance and the consequent damages suffered by the defendant may be made the basis both of a defense and of a counterclaim. It may be that the plaintiff will be held to be entitled to compensation for what he has done or has delivered, but to be subject to a recovery for his default, in which case the counter demand will be a counterclaim only, or it may be that his default will be held to cut off his demand as well as to entitle the defendant to recover, and in the latter case the defendant's claim is both a defense and a counterclaim." In the case at bar the equitable matter in the answer (if sufficient for any purpose) not only

EQUITABLE counterclaim.

tends to show a complete defense to the action, but it is sufficient to form the basis of an independent equitable action which makes it an equitable counter-claim or cross action.

Under the views of my associates as expressed in a separate opinion, the judgment of the circuit court must be reversed and the cause remanded. It is so ordered.