NODAWAY DRAINAGE DISTRICT NUMBER ONE v. ILLINOIS SURETY COMPANY, Appellant.

### In Banc, November 24, 1913.

1. **CORPORATION: Not Licensed to do Business in This State: Contractors: Liability of Surety.** The surety on the bond of a foreign corporation, which has obtained no license to do business in this State but has entered into a contract to do certain construction work, is liable for damages to the obligee resulting from a breach of the contract. Besides, the surety,

having by its bond unconditionally guaranteed the performance by such foreign corporation of its contract, by necessary implication guaranteed that said foreign company would take all proper steps required to enable it to perform its contract, even to the extent of seeing to it that it obtained a license from the State, if that were necessary to the performance of its contract,

2. **BOND FOR PERFORMANCE OF CONTRACT: Liability of Surety: Notice of Default.** Where the surety in its answer alleged that its principal had performed all the conditions of the contract up to January 1st, and the time limit for the performance of the contract expired on January 15th, and on January the 16th the obligee notified the surety that its principal had abandoned the work and left it in a worthless state and half completed, there was sufficient compliance with the provision of the bond requiring the obligor to be notified within twenty-four hours of any default on the part of the principal; especially, where the answer does not plead a failure to give notice as a defense.

3. ———: ———: Remedies. Where the contractor has abandoned his contract and left the work unfinished, two remedies are open to the contractee: either to complete the work in strict accord with the contract under which it had been let, and after that has been done to sue for the excess of the reasonable cost of its completion over the contract price, or to sue on the contractor's bond for a breach of the contract and recover the probable damages directly caused by such breach.

4. ———: ———: Completed Under New Contract: Measure of Damages. Where the contractor abandoned the work, leaving it in an unfinished state, the contractee had the right, after the expiration of the time limit fixed by the contract for completing it, to complete the work under new contracts with other parties, and to sue the surety of the original contract for damages for its breach; and the measure of his damages is the excess above the original contract price which he had reasonably paid up to the time of the trial and would be compelled to pay for the completion of the work according to the plans and specifications of that contract.

Appeal from Holt Circuit Court.—*Hon. W. C. Ellison,* Judge.

Affirmed.

*Frank Petree* and *David J. Peffers* for appellant; *Albert J. Hopkins,* of counsel.

(1)  The court erred in sustaining the motion of the plaintiff to strike out certain portions of defendant's answer, by which the court struck out all that part of the answer referring to the failure of Gilligan Company to procure a license to do business in the State of Missouri.  Inasmuch as it is admitted that Gilligan & Company had not complied with the laws of Missouri, the contract made and entered into by the Gilligan Company with the drainage district was void, and no recovery can be had thereon.  Shoe Mach. Co. v. Ramlose, 210 Mo. 631; Construction Co. v. Railroad, 154 Fed. 929.  (2)  The court erred in refusing to sustain defendant's demurrer to the evidence, and to instruct the jury to find a verdict in favor of the defendant.  (a)  The testimony shows that the contract work was far from being completed at the time the suit was commenced, or at the time of the trial.  The surety has the right to stand on the strict terms of its contract.  The drainage district cannot use the unpaid balance of the contract price, or pay it out as against the surety, on any other terms than those fixed in the contract, and it must be paid out as the work progresses.  This necessarily required the drainage district to proceed with the work and pay the fund on estimates as provided in the contract and to complete the work before calling on the surety to answer damages.  If the drainage district collects the amount of its damages in this case, there is no obligation upon it to proceed with the work and finish it, and the money collected from the surety, if it is collected, may be used for other purposes and different ditches than those covered by the original contract.   The surety stood only for the construction of this particular system of ditch.  Until the work was completed, the drain-

age district had no cause of action against appellant. Hunt v. Railroad, 36 Fed. 481. (b) The various new contracts bear no resemblance whatever to the original contract as modified. The size of the ditch in some of these contracts is different from the size fixed by the original contract as modified. The method and means of payment are different. These new contracts so changed and altered the work to be done that the appellant was and is discharged from all liability to the said drainage district. Transit Co. v. Walker & Son, 158 Fed. 850; Transit Co. v. Mott, 169 Fed. 543; Bonding Co. v. United States, 167 Fed. 910; Evans v. Graden, 125 Mo. 72; Beers v. Wolf, 116 Mo. 179. (c) Under the law the Surety Company had the right to have any retained percentage of the installments earned by the Gilligan Company, and any unexpended balance of the contract price held by the drainage district, applied toward the construction of the particular ditches covered by the original contract. Large portions of the balance of the contract price held by the district were paid out and expended upon a different size ditch, and upon contracts which materially differed in their terms, provisions and conditions and methods, from the original contract. These payments discharged the surety. (d) Again, the original contract provides that ten per cent of each installment due upon the estimate of the engineer, should be retained until the close of the work under the contract. This was not done. Evans v. Graden, 125 Mo. 72; Fidelity Co. v. Agnew, 152 Fed. 955; Welsh v. Hubschmidt, 61 N. J. L. 57; Wehrung v. Denham, 42 Ore. 386. The surety has the right to stand upon the strict terms of his bond; that he is bound to the extent of his contract, and no further. Any changes made in the provisions of the contract, or any payments made in violation of the same, discharge the surety. The surety is bound *in toto,* or not at all. Burnes v. Fidelity & Deposit Co., 96 Mo. App. 467; Reissaus v. Whites, 128

Mo. App. 135; Bowman v. Heating Co., 80 Mo. App. 628. (f) The bond required that the surety should be notified in writing of any act, omission or default on the part of the principal or his agents or employees, which may involve a claim for which the surety is or may be responsible, within twenty-four hours after the occurrence of such act, omission or default shall come to the knowledge of the obligee, or its agents or officers. The district knew by December 1, 1907, the work was not progressing and could not be completed by the time and various defaults of the contractor were known by the district and no notice was given the surety. The failure to give notice discharged the surety. Surety Co. v. Long, 125 Fed. 887.

*T. C. Dungan* and *James W. Boyd* for respondent.

The circuit court committed no error in striking out certain portions of defendant's answer relating to the failure of the Gilligan Company to procure a license to do business in the State of Missouri. (a) While it may be true that the circuit court struck out of the appellant's answer the portion referred to, it is also a fact that the appellant made no further complaint thereof; and even in its motion for a new trial made no mention of the point it now makes in this respect. Appellant having failed to do this, the contention made by it here, now, is upon a matter not before this court. Williams v. Railroad, 112 Mo. 163; Acock v. Acock, 57 Mo. 154; Curtis v. Curtis, 54 Mo. 351; Lyon v. LaMasterm, 103 Mo. 612; State ex rel. v. Burckhardt, 83 Mo. 430; Bollinger v. Carrier, 79 Mo. 318; Bank v. Allen, 68 Mo. 474; State v. Gilmore, 110 Mo. 1; Railroad v. Carlisle, 94 Mo. 166; State v. Richardson, 194 Mo. 336; Shohoney v. Railroad, 231 Mo. 142; Sternberg v. Levy, 159 Mo. 624; Godfrey v. Godfrey, 228 Mo. 507; Bank v. Klein, 33 Mo. 559; Tarkio

v. Clark, 186 Mo. 285; Bick v. Dry, 134 Mo. App. 589; State v. Fraker, 137 Mo. 258; Daggs v. Smith, 193 Mo. 494. (b) The matter stricken out by the court, constitutes no defense, nor any part of a defense, in this case. The statute relied upon by the appellant was not enacted to protect an incorporation violating it, nor was it enacted to protect a surety who or which assisted the contractor or corporation, to go contrary to the laws of this State. Secs. 3039, 3040, R. S. 1909. No person can take advantage of his own wrong. It is absolutely sure that the said contract was binding upon John Gilligan and John Gilligan Company, and it was and is equally binding upon the Illinois Surety Company, which became the surety, with full knowledge of all the facts in the case. Lobaugh v. Thompson, 74 Mo. 600; Long v. Cockrell, 55 Mo. 93.; Machine Co. v. Maxwell, 63 Mo. 486; 24 Am. & Eng. Ency. Law (1 Ed.), 773; In re Wiggin's Appeal, 100 Pa. St. 155; Tenant v. Tenant, 4 Pa. St. 478; Winn v. Sanford, 145 Mass. 302; Kimball v. Newell, 7 Hill (N. Y.), 116; Yale v. Wheelock, 34 Pa. St. 60; Adams v. Cuny, 15 La. Ann. 485; Whitsworth v. Carter, 43 Miss. 61.; State v. Watts, 44 N. J. L. 126; Foxsworth v. Bullock, 44 Miss. 457; Hicks v. Randolph, 59 Tenn. 352; Smyley v. Head, 2 Rich. (S. C.) 590; Nabb v. Koontz, 17 Md. 283; Stillwell v. Bertrand, 22 Ark. 375; Jones v. Crosthwaite, 17 Iowa, 393; Lee v. Yandell, 69 Tex. 34; Davis v. Statts, 43 Ind. 103; Bank v. Dillon, 30 Vt. 122; Bank Note Co. v. Cement Co., 155 Mo. App. 351; Young v. Gaus, 134 Mo. App. 166; Coal & Coke Co. v. Lead & Zinc Co., 157 Mo. App. 720; Steele v. Culver, 158 Mo. 136; Layson v. Cooper, 174 Mo. 211; 19 Cyc. 1301-C. (2) Much is said by the appellant as to what it contends to be a rule of law in reference to a surety. Appellant has said, and repeats five times, that a surety is entitled to have a contract literally construed, or that it is entitled to rely upon its terms. This old suggestion was made when one person became a surety

for another, without consideration, and as a matter of accommodation. That was the method pursued for hundreds of years. Now, the appellant is not entitled to be protected or guarded by any other than the usual rule of law relating to contracts. The appellant is in business to become a surety, for a consideration, just like an insurance company issues a policy for the premium paid. In the answer, the appellant says it is a corporation created, organized and incorporated under the statutes and laws of Illinois "for the purpose of providing and furnishing surety to contractors, agents, trustees and public and private officers, and for doing a general surety business." Martin v. White, 128 Mo. App. 117. While the appellant is a surety it ought to be held under the circumstances of this case to full performance of its duty to the Nodaway Drainage District No. 1, which was organized for the benefit of the public, and not for gain or profit. (3) The contention of the appellant made by its point 2, is not tenable and the authorities cited by appellant to sustain this position on its part, are not in point. (a) In the first place, it is admitted, or shown by the undisputed evidence, that the Gilligan Company abandoned its contract, about the 15th of January, 1908, and left the ditch unfinished. The appellant was promptly notified by full and complete communications. (b) It does not lie in the mouth of the appellant to say that this suit is premature. After the Gilligan Company abandoned its contract, and when the respondent instituted this suit, it was respondent's duty to sue for the full amount of the damages which accrued to it by said breach, and the appellant is estopped from a contrary contention. (c) Appellant claims that certain new contracts bear no resemblance to the contract on its part, as modified. In this statement the appellant is absolutely in error. The contracts made by the respondent after the appellant refused to perform its duty, required the contractors to excavate and dig the ditch to exactly the same depth,

width at top and bottom as specified in the original contract, except in one or two instances. But we desire to say once and for all time, if a change was made we are not suing for the cost of the change. The instruction of the court as to the measure of the damages, and everything which occurred at the trial, shows that the respondent is undertaking to collect as damages, only, for the injury inflicted upon it by the failure of the Gilligan Company to perform its contract. The appellant is not concerned in these contracts, nor in their manner of payment, nor in anything in reference thereto, so long as the respondent is not charging, or attempting to charge it, with the cost of any change or anything of that kind. We repeat that all the authorities cited by the appellant under this head, are cases wherein the owner and the original contractor changed the original contract without the consent of the surety. (d) The fact that the original contract provided that ten per cent of each installment of all estimates made by the engineer should be retained until the end of the work on the contract, has no application in the matter after the Gilligan Company and the Illinois Surety Company abandoned their obligations, and the board of supervisors had to make contracts with different people to get the ditch dug. It is not contended by appellant that respondent ever paid the John Gilligan Company the ten per cent which was to be retained out of each payment. (e) The appellant in its answer, three times states, that Gilligan and the John Gilligan Company fully performed all their duties, in every respect, up to January 15, 1908; and according to its answer, it was not entitled to any notice, but if it was entitled to any notice, it was its duty to make an affirmative defense of that kind, in its answer, just like it is the duty of an insurance company to say in its pleading that it was not furnished with notice of fire proof of loss. Hilburn v. Ins.

Co., 140 Mo. App. 355; Burgess v. Ins. Co., 114 Mo. 188;
Hester v. Fidelity & Casualty Co., 69 Mo. App. 194.

## STATEMENT.

The petition states that the plaintiff is a corpora-
tion of this State organized for drainage purposes with
jurisdiction of a contiguous body of swamp and over-
flowed lands in the counties of Holt, Nodaway, and
Andrew, and is engaged in constructing works and
improvements in its district; that "the John Gilligan
Co." is a Nebraska corporation engaged in contract-
ing for building and constructing bridges, drainage
dyking systems and other public improvements. That
the Illinois Surety Company is a corporation of that
State, engaged in furnishing suretyship for contractors
and others; that plaintiff, after adopting a general
drainage system and plan of improvement for its dis-
trict, contracted for work, in accordance therein, with
one John Gilligan; the particulars of the work to be
performed by him and the respective covenants and
stipulations of the parties to said contract are fully set
out and described.

The petition further alleges that the considera-
tion to be paid by the plaintiff, for the work described
in said contract, was $40,000, which was apportioned,
to-wit: $36,850 for construction of ditches, $3150 for
construction of bridges; that payments were to be made
to the contractor upon estimates of his work reported
to plaintiff by its chief engineer or his assistant; that
rights of way should be obtained without cost to the
contractor, and delays caused by litigation over rights
of way were not to be counted against him; that the
contractor should give bond in the sum of $10,000 to
secure his covenants; that the work should begin Sep-
tember 1, 1906, and be completed in one year, barring
inevitable accidents and two exceptions, the work on

"Floyd cut-off" and "Blood Hill cut-off," for which six months additional time was allowed.

The petition further states that the defendant, the Illinois Surety Company, entered into a bond guaranteeing the faithful performance of the contract made by said John Gilligan with the plaintiff; that the contractor, John Gilligan, thereafter incorporated himself and others as the "John Gilligan Co.," and took charge of the work until after the time for its completion had expired.

The petition then alleges breaches of the bond, in that, in the particular respects set forth in the petition, the contractor did not faithfully keep and perform the conditions and terms of his contract; that the Illinois Surety Company was duly notified of the defaults and omissions of the contractor; that thereafter the following modifying contract was entered into and the following indorsement placed thereon, by the defendant, the Illinois Surety Company.

"Change of Contract.

"Whereas the contractor John Gilligan and his assignee the John Gilligan Company have defaulted or failed to complete the work under the contract with the Nodaway Drainage District No. One within the time specified in said contract, and has thereby made the bond of the Illinois Surety Company liable to the said drainage district, and whereas the John Gilligan Company is desirous of having an extension of the time for the completion of the said work contracted for, until January 15, 1908; and whereas, said drainage district and the said the John Gilligan Company are both desirous of modifying and changing that part of the said contract work from station "O" to station 46 plus 41 feet, being a distance of 4641 feet, . . . and that the said the John Gilligan Company shall be allowed an extension of the time for the completion of the work of construction of said plan of drainage so contracted for and herein modified until the 15th day

of January, 1908; provided, however, the said Illinois Surety Company will by written indorsement hereon agree that their said Bond Company will consent to such change of ditch and work and such extension of time as aforesaid, and will bind itself to stand as surety for the completion of said original contract and work and as so modified and extended as above stated.

"Witness our hands this 10th day of September, A. D. 1907.

> "Nodaway Drainage District No. 1,
> > "J. W. PATTERSON, President,
> > "C. W. LUKENS, Sec'y-Treas.
> "The John Gilligan Co.,
> > "By C. W. REAVIS, President.
> > "By J. A. CROOK, Sec."

"We hereby agree to the above change of contract, and to the extension of time for the completion of the same as modified, and bind ourselves to stand as surety under our bond for the said John Gilligan Company for the completion of said original contract as modified and changed. Witness our hands this 14th day of September, A. D. 1907.

> > "ILLINOIS SURETY COMPANY,
> > "By F. P. BLOUNT, President.

"Attest:

> "H. W. WATKINS, Secretary.

"(Seal.)"

The petition further states that "the John Gilligan Co." mentioned in the above contract did not well and truly perform the obligations imposed on it thereby, in the particulars fully set out in the petition; that before the lapse of the time therein specified, the said John Gilligan Company wholly abandoned the further performance of its contract and wrongfully failed and refused to comply with its terms, covenants and stipulations, although often requested so to do by plaintiff; that the said John Gilligan Company then left the said

work and improvements in a bad, worthless condition and a total loss to the plaintiff.

The petition further states that the plaintiff notified the defendant, the Illinois Surety Company, fully of the failures and omissions of the John Gilligan Company as to the performance of his contract with plaintiff, and that the Illinois Surety Company did nothing directly or indirectly towards securing the performance of said agreement.

The petition further states that the plaintiff was compelled to pay sums of money to other persons as the reasonable value of work done by them as to matters and things wherein the John Gilligan Company had failed to comply with its contract. (All set out in detail in the petition.)

The petition further states that by reason of the matters therein before alleged the defendant, under its bond as surety, exhibited with the petition, had become indebted to plaintiff for an amount in excess of the penalty thereof. It prayed judgment for $10,000 specified in said bond and for an assessment of damages for that sum.

The answer of the defendant is summarized in appellant's brief, to-wit:

"It admits that the plaintiff had paid out to John Gilligan and to John Gilligan Company the sum of $24,000 of the contract price of $40,000, although said improvements were not and are not one-half complete, and charges that all overpayments were made without the knowledge or consent of the defendant. It admits that the contractors were substituted and the defendant extended its suretyship to the John Gilligan Company. It denies default upon the part of the Gilligan Company. It further charges that after the plaintiff undertook the work that it, the respondent, without the knowledge or consent of appellant, made new and additional contracts for the construction of the work which differed materially in terms and conditions

from the contract upon which the appellant was bound and that thereby the said Surety Company was released from liability. It further alleges that John Gilligan Company was a corporation organized under the laws of Nebraska and it had never complied with the laws of Missouri so as to authorize it to do business in said State and that the contract entered into between plaintiff and the said John Gilligan Company was illegal and void."

The last clause of the answer was on motion stricken out, defendant excepting. The reply took issue. The jury found for plaintiff for the penalty of the bond and assessed the damages in that amount. The defendant duly perfected its appeal to this court. The errors assigned and the evidence relevant to rulings thereon, will be considered and stated hereafter.

## OPINION.

### I.

BOND, J. (After stating the facts as above.)— The first error assigned by the appellant is, the action by the trial court in striking out that portion of its answer, which alleged as a defense that its principal, the Gilligan Company, had not been licensed to do business *in this* State, wherefore its contract with the plaintiff was void; and hence the bond entered into by defendant securing the performance of said contract was also void. That is quite a novel proposition independent of its moral aspect. Whether
Foreign
Corporation:  the Gilligan Company could have enforced
Liability of  its contract against plaintiff or *vice versa,*
Surety.       is a matter between it and the plaintiff, as to which the present defendant is not interested. This action is for breach of the contract made by this defendant with the plaintiff by the terms and stipulations of the bond sued upon. This defendant was au-

thorized to do business in this State by executing
bonds, to secure the performance of the obligations
assumed by other persons or corporations, for which
this defendant received a valuable consideration and
probably indemnity. The contract between the plain-
tiff and defendant, expressed in the bond sued upon,
was in all respects lawful and made between compe-
tent parties. Its legal effect was an *unconditional* un-
dertaking on the part of the defendant, that the Gil-
ligan Company should faithfully perform the work and
duties imposed upon it by an agreement between it and
the plaintiff. If it became necessary for the Gilligan
Company to obtain a State license before doing the
work which it contracted to do, then the obtention
by it of such a license was within the *unconditional*
contract made by the defendant with the plaintiff that
the Gilligan Company should faithfully carry out its
contract with the plaintiff. The license in question was
not impossible to obtain, for under the law, it would
have been issued to the Gilligan Company upon com-
pliance on its part with the statutory requirements;
hence, even if it should be held that such a license
was essential to the validity or enforceability of the
contract between plaintiff and the Gilligan Company,
it would also have to be held that it was the duty
of the present defendant under the agreement made
in bond in suit, to see to it, that the Gilligan Com-
pany should take the proper steps to authorize it to
proceed with its contract, and should thereafter, in all
respects, well and truly perform such contract accord-
ing to its stipulations and obligations. This upon the
clear principle that the obligations of an *unconditional*
contract impose upon the obligor the performance of
all covenants which are not illegal or impossible of
performance. [Whittemore v. Sills, 76 Mo. App. l. c.
251.] It is evident that the obtention of a license to
do business in this State by the Gilligan Company was
a matter of easy accomplishment and which was sanc-

tioned and provided for by law of this State; and it is equally plain that the present defendant, having by its contract guaranteed the performance of the Gilligan contract, by necessary implication guaranteed that the Gilligan Company would take all *proper steps* required to enable it to perform its contract. The necessary corollary to these propositions is, that the failure of the Gilligan Company to do any of the things which the defendant had contracted it should do, was breach of defendant's contract which entitled plaintiff to the resulting damages. The contrary position now assumed by defendant is not only untenable, but places it in the unenviable attitude of repudiating the terms of a lawful contract for the making of which it received an adequate consideration, and, inferably, protection against loss which, as we understand, is the only basis upon which contracts like the one in suit are executed. [Lobaugh v. Thompson, 74 Mo. 600; Young v. Gaus, 134 Mo. App. 166.]

For the foregoing reasons we have reached the conclusion that the ruling of the trial court, on the point under review, was correct, irrespective of the technical support afforded to it, by the failure of the defendant to complain thereof in its motion for new trial or properly to present the matter for review. [Shohoney v. Railroad, 231 Mo. l. c. 142; Williams v. Railroad, 112 Mo. 463.]

## II.

The appellant in this case requested no instructions except a direction to find in its favor. It complains of certain instructions given for plaintiff and a misreception of evidence. The various points discussed in appellant's oral argument and brief arise under the foregoing assignments of error and may be disposed of by a review of the questions presented by the above classification.

In support of the contention that there was error in the refusal of its peremptory instructions, appellants main contentions are; (a) that it did not receive the notice, prescribed by the terms of its contract with plaintiff, of the defaults and omissions of its principal, the Gilligan Company, in the matter of performing the work; (b) that plaintiff after the abandonment of the work by the Gilligan Company entered into materially different contracts with other persons. We will consider these in order:

### III.

Attached to the bond in suit was provision that the obligor should be notified in writing of any act or default on the part of his principal, involving loss to the surety, within twenty-four hours, by registered letter mailed to the Chicago address of the Surety Company. The answer of the defendant sets up, as an affirmative defense, that the principal was ousted about January 1, 1908, from the further performance of the work, and "that John Gilligan and the John Gilligan Company [the principal] had up to that time performed all the conditions contained in said original contract as well as in its modifications, that they had agreed on their part to perform, in digging or otherwise."

*Surety: Notice of Default of Principal.*

*The answer nowhere pleads the failure to give notice as a release of defendant from its bond of suretyship.*

The respondent gave defendant the following notices:

"Oregon, Mo., Jan. 16, 1908, Office of Chief Engineer of Nodaway Drainage District No. One.

"The Illinois Surety Company,
    Chicago, Ill.

"Dear Sirs:

"In compliance with the provision of your bond, executed to the Nodaway Drainage District No. One, securing the John Gilligan contract with said drainage district, I hereby forward you the following notice by registered letter: The time of the contract between the said the John Gilligan Company and the said drainage district expired yesterday, the 15th day of January, 1908, and the said the John Gilligan Company has failed in the fulfillment of said contract.

"We will therefore, look to you for damages arising from said failure.

"Yours truly,

"JOHN H. PERET,

"Chief Engineer and Superintendent of the Works."

And afterwards these notifications and demands:

"It is hereby ordered by the board of supervisors of Nodaway Drainage District No. 1 that the John Gilligan Company, the assignee of the original contractor, John Gilligan, and the Illinois Surety Company, of Chicago, Illinois, the surety of the said contractor and its said assignee, be notified by the attorney of the said board, that they and each of them, are required to adjust and settle, at once, with the said board of supervisors of said drainage district, for all damages resulting to said drainage district, by the failure of the said contractor and its assignee and their sureties, the Illinois Surety Company, to comply with his, and its contract, and the conditions of said bond, and that unless such adjustment and settlement is so made by the fifth day of February, A. D. 1908, legal steps will be taken by said drainage district against them, and each of them, upon the said contract, assignment and bond; and it is further ordered, that each of said parties, the John Gilligan Company and the Illinois Surety Company, be furnished with a copy of this order, duly certified by the secretary of this board, to

be forwarded to éach of them, to the last known post office address, by the said attorney of said district.

"I, Charles W. Lukens, the secretary of the said Nodaway Drainage District No. 1, of Holt county, Missouri, hereby certify that the above and foregoing is a true and correct copy of an order made by the said board of supervisors at its last meeting held on the 22d day of January A. D. 1908, as fully as the same appears upon the minutes and records of the said Nodaway Drainage District No. 1.

"Witness my hand with the seal of the said Drainage District No. 1, at the city of Oregon, Missouri, this 22d day of January, A. D. 1908.

"C. W. LUKENS,

"Secretary Nodaway Drainage District No. 1.

"(Seal Nodaway Drainage District No. 1.)"

To which this answer was made:

"January 30, 1908.

"Mr. T. C. Dungan, Attorney for Board of Supervisors, Oregon, Mo.

"Dear Sir: We acknowledge receipt of your notice of January 22d, relative to the John Gilligan Company.

"Same will receive our immediate attention.

"Yours truly,

"ILLINOIS· SURETY COMPANY,

"By JAMES S. HOPKINS."

On February 5th. respondent's attorney sent the following letter which seems was unanswered.

"Office of T. C. Dungan, Attorney at Law,

"Oregon, Mo., February 5, 1908.

"The Illinois Surety Company, Chicago, Illinois.

"Dear Sirs: Your letter of recent date, in answer to mine, in reference to the default of the John Gilligan Company, on its contract for the construction of the work and improvements, contracted by it, with the Nodaway Drainage District No. 1, and your conse-

quent liability on your bond, was duly received, and I note what you say, as to the matter having your immediate attention. The time expires today, and the board has just had a meeting and have instructed me to write you in answer.

"The John Gilligan Company did not appear, although duly notified of the meeting, and so nothing was done, or offered on their part. Mr. Stevens, the purchaser of the dredge boat, and assignee of the Gilligan contract, seemingly a good man, was present, but could do or offer nothing.

"The board refused to recognize his assignment, or to approve the same, or to extend the time to him, or to the John Gilligan Company, or to do anything until the liabilities and damages sustained by it have been adjusted and settled by the said Gilligan Company or its surety.

"The board recognizes the right of such Surety Company to complete the said contract and work, within a reasonable time, according to the terms of the contract.

"Now, the board desires to know, at once, whether or not your company as such surety wishes to take hold, by itself, or by its contractors and employees, or to hire Mr. Stevens to finish this work, and complete the contract.

"The work and ditches, both main and lateral, are in bad shape and getting worse every day, and will soon fill up, unless they have immediate attention, and the damages suffered by the drainage district will be greatly enhanced and increased.

"If your company, explicitly, refuses to take charge of this work, and complete this contract, then the board will feel at liberty to do it themselves, and look to the John Gilligan Company, and the surety on its bond, for all increased cost and damages sustained by such drainage district.

"Please let me hear from you, at once, as to what your intentions are in this matter, so that the board may act advisedly in the premises.

"Yours truly,

"T. C. DUNGAN,

"Attorney for Board of Supervisors of Nodaway Drainage District No. 1."

We think these notices of the defaults of the principal were all that were required to be given under the terms of the bond, the allegation of due notice in the petition, and the averment in the answer that no defaults were made by the principal up to January 1, 1908.

After this statement of the answer, respondent was not required to prove notice for any default or omission prior to the date (about June 1, 1908) before which the answer expressly admitted no defaults or failures of the principal had existed or taken place. For as said by GRAVES, J., in speaking of an answer against the interests of a defendant, "It is fundamental that what is admitted by the pleadings is unnecessary to be shown by the testimony." [McKenzie v. United Railways Co., 216 Mo. l. c. 19.]

Although the answer of the appellant in this case contained a preliminary clause, denying all allegations of the petition, "except such as hereinafter admitted;" this, by its very terms, could not be a denial of what was *afterwards* both *admitted,* and set up as a special defense to the action. Hence it was only necessary for respondent to show that the proper notice was given of the defaults after the time, up to which appellant admitted there were none.

Now it was incontrovertibly shown that on January 15, 1908, the *time limit* of the performance of his contract, the principal had abandoned it and left the work in a worthless state and not half completed. That thereafter, full and prompt notices of the defaults and

failures of the principal were sent to the defendant whose reply was that "same will receive immediate attention." The defendant did not in its correspondence, nor when its answer was filed, claim a want of prior notice or set that up as a release from the obligations of the bond. Neither did it give the matter any attention nor did it exercise its option to take charge of and complete the work or cause the same to be done.

Under the pleadings and evidence in this case we do not think the appellant is in any position to claim that due notice was not given to it of the defaults and failures of its principal and we overrule its contention on that point.

## IV.

There is no evidence whatever that prior to the abandonment of the work by the contractor or before the expiration of the time for its completion, any change of plan or performance was made which materially altered the contract or effected

Change of
Plan: No
Evidence.

its integrity. Hence, this case does not fall within the rule relating to change in contracts during the course of performance, without the consent of the surety. [Fuller v. Doyle, 87 Fed. 1. c. 694; Heidbrink v. Schaffner, 147 Mo. App. 1. c. 643.] Since the surety in the case at bar has not shown any facts or circumstances prior to the time when its principal abandoned his contract or before the date fixed for its completion which would entitle it to invoke the above rule, we hold the case does not fall within its purview.

## V.

But the theory of the appellant is, as we gather it from the brief and argument, that the only remedy

left to respondent after the time the work was to be done and after it had been .abandoned **Breach of Contract: Remedies.** by the contractor, was to take it in hand and cause it to be completed, strictly in accord with the provisions of the contracts under which it had been originally let, and after that had been done, to bring suit for the excess of the reasonable cost of its completion over the contract price. We cannot assent to that view. It is universally held that, upon the breach of a contract of the kind made by respondent with the Gilligan Company, and guaranteed by the bond of defendant, two remedies are open to the contractee against the contractor and his surety. The suggestion of appellant is one of these remedies, the other remedy is the right to sue for breach of such contract at any time thereafter, and to recover the probable damage directly caused by such breach. [Spink v. Mueller, 77 Mo. App. 1. c. 93; Hirt v. Hahn, 61 Mo. 496; Simons v. Wittmann, 113 Mo. App. 1 .c. 370.]

This is but the correlative of the rule of law governing cases where the contractor is notified by the other party that he has annulled and repudiated the contract. In such cases the rule is settled that the contractor may sue at once and recover as his damages "the difference between the contract price and what it would have cost to perform the uncompleted part." [Berthold v. St. Louis Elec. Co., 165 Mo. 1. c. 304; Chapman v. Railroad, 146 Mo. 494; Black River Lumber Co. v. Warner, 93 Mo. 374; Gabriel v. Brick Co., 57 Mo. App. 520; 2 Sutherland on Damages (2 Ed.), sec. 713; Fitzgerald v. Hayward, 50 Mo. 1. c. 524.]

The only difference between those cases and the one at bar, is that here the contract was abandoned and repudiated by the contractor and not by the contractee. Necessarily the contractee is entitled to compensation on the same basis which is applicable to

the contractor; i. e., the difference between the reason-
able cost of completing the work and the
<span style="float:left">Measure of<br>Damages.</span> price agreed to be paid; and unless that
would exceed the contract price no recov-
ery could be had, since the contractee (the drainage
district) could not be damaged by being compelled to
pay what it had agreed to pay. The purpose and ob-
ject of the rule announced in the above decisions was
to measure the compensation of the contractor by the
excess of the contract price over what it would have
cost him to complete the work, thereby giving him
the benefit of his contract. This is all that is sought
in the present action. And it cannot affect the right
of respondent to this relief, that a physical difference
in the application of the rule (necessitated by the rela-
tive rights of the two parties to the agreement) re-
qured proof in this case of the excess of cost *above*
the contract price instead of *below*. it. This distinc-
tion rests only upon the peculiar interests and rights
of the two parties to the agreement. But the principle
of making the contract price the standard beyond which
one of them could not recover, and below which the
other could not be damaged, is identical. The inju-
ries to each of the parties, upon a repudiation of the
contract by the other, consists in the failure to get the
benefit of the price fixed in his agreement, in the one
case by being compelled to pay more than that sum,
and in the other case by receiving less than that sum;
the comparison in both cases, to be made as upon full
performance of the work, by the suing party, at its
reasonable cost.

After unavailing efforts to induce the appellant to
take charge of the further performance of the work,
and after the principal had repudiated his contract and
the time fixed therein for the work had expired, re-
spondent undertook to complete the same under the
new contracts with the other parties and brought this
action against appellant for damages caused by the

failure to comply with the obligations imposed by the bond in the suit. [3 Sutherland on Damages (3 Ed.), sec. 699; Am. Surety Co. v. Woods, 105 Fed. 1. c. 746.]

The case was tried below upon the theory that respondent was entitled to recover any excess above the contract price which it had reasonably paid up to the time of trial and would be compelled to pay for the completion of the work, according to the plans and specifications of the original contract. This is shown by the instructions numbered 1, 2, 3 given by the court on behalf of the plaintiff, which set forth fully the original plans and specifications under which the work was to be performed, the bond and its conditions executed by appellant, together with a proper hypothesis of the facts, to enable the jury to pass on the issues presented under this legal principle. We hold there was no error in thus submitting the case to the jury and that it was not *indispensable* that respondent in order to maintain his action, should first have completed or caused to be completed, the entire work; but that it had the legal right upon the expiration of the time limit of its contract, letting the work, and its abandonment in an unfinished state, to bring this action for the proximate damages caused by such breach against appellant, upon the guaranty contained in the bond in suit.

The conclusions reached above dispose of the criticism made by appellant upon the instructions given by the court and its refusal to direct a verdict.

## VI.

Appellant makes some complaint as to the admission of testimony. An examination of the testimony objected to, does not sustain the view of the appellant, that it was inadmissible on the ground that
**Evidence: Guess.** it contained a mere guess of the witness as to the cost of the final completion of the

work. In the instance at mind Mr. Peret stated: "When I said that it cost $14,000 to dig the ditch, I meant that it would cost $14,000 to finish what remains to be dug on the ditch from station O to Station 46. I don't know to the exact cent. I am not guessing at it. In making my estimate of $14,000 I meant to put it in condition as is called for by the plans and specifications."

The record shows that this was only part of the uncompleted work and had no reference to the cost of its *entire* completion. The answer further discloses that the estimate of the expert witness was made on the cost of the work if done *according to the plans and specifications of the original contract.* Which was the proper basis for the estimates.

There is evidence in the record that the aggregate of the amounts paid by the plaintiff to the defaulting contractor, and the reasonable sum expended for the prosecution of the work up to the time of the trial, and the further reasonable sum which must be expended for its completion in the manner provided for in the original contract, will largely exceed the amount of recovery in this case, after the deduction of the contract price, from the foregoing aggregate. According to this testimony, the verdict of the jury is well within the damages suffered by plaintiff and the judgment thereon is affirmed.

## IN BANC.

PER CURIAM.—The foregoing opinion of Bond, J., in Division is adopted by the Court in Banc. *Graves* and *Bond, JJ.,* concur; *Brown* and *Faris, JJ.,* concur in result; *Lamm, C. J., Woodson* and *Walker, JJ.,* dissent.